**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Shelley L. Ireland, | No. CV-21-01944-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Pending before the Court is Plaintiff Shelley L. Ireland's appeal from the Commissioner of the Social Security Administration's (SSA) denial of social security benefits. (Doc. 13-3). The appeal is fully briefed (Doc. 14; Doc. 15; Doc. 16), and the Court now rules.

**I.     BACKGROUND**

**A.     Factual Overview**

Plaintiff was 46 years old on her alleged disability onset date of November 1, 2018. (Doc. 14 at 2). She had a high school education and past relevant work as a case manager and counselor. (*Id.* at 3). On December 14, 2018, and May 21, 2019, respectively, Plaintiff filed applications for Social Security Disability Insurance (SSDI) and Supplemental Security Income (SSI). (*Id.*) As relevant here, Plaintiff alleged mental health impairments of bipolar disorder, posttraumatic stress disorder (PTSD), and attention deficit hyperactivity disorder (ADHD). (Doc. 15 at 2). Denial of Plaintiff's claim occurred initially on October 15, 2019, and upon reconsideration on January 30, 2020. (Doc. 13-3 at 19).

Plaintiff filed a written request for a hearing before an ALJ, which occurred via telephone on February 2, 2021. (*Id.*) An impartial vocational expert (VE) also appeared and testified in the hearing. (*Id.*) The ALJ issued a decision on March 17, 2021, finding that Plaintiff was not disabled under Section 1614(a)(3)(A) of the Social Security Act. (*Id.* at 34; Doc. 14 at 2). On October 4, 2021, the SSA Appeals Council denied Plaintiff's request for review of the ALJ's decision and adopted the ALJ's decision as final. (Doc. 14 at 2). Plaintiff filed the present appeal following this unfavorable decision. (*See generally* Doc. 1).

### B. The SSA's Five-Step Evaluation Process

To qualify for social security disability insurance benefits, a claimant must show that she "is under a disability." 42 U.S.C. § 423(a)(1)(E). To be "under a disability," the claimant must be unable to engage in "substantial gainful activity" due to any medically determinable physical or mental impairment. *Id.* § 423(d)(1). The impairment must be of such severity that the claimant cannot do her previous work or any other substantial gainful work within the national economy. *Id.* § 423(d)(2). The SSA has created a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520(a)(1). The steps are followed in order, and each step is potentially dispositive. *See id.* § 404.1520(a)(4).

At step one, the ALJ determines whether the claimant is engaging in "substantial gainful activity." *Id.* § 404.1520(a)(4)(i). "Substantial gainful activity" is work activity that is (1) "substantial," i.e., doing "significant physical or mental activities;" and (2) "gainful," i.e., usually done "for pay or profit." 20 C.F.R. § 416.972(a)–(b). If the claimant is engaging in substantial gainful work activity, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(i).

At step two, the ALJ determines whether the claimant has "a severe medically determinable physical or mental impairment" or severe "combination of impairments." *Id.* § 404.1520(a)(4)(ii). To be "severe," the claimant's impairment must "significantly limit" the claimant's "physical or mental ability to do basic work activities." *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the ALJ

will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(ii).

At step three, the ALJ determines whether the claimant's impairment(s) "meets or equals" an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the ALJ will find the claimant is disabled, but if not, the ALJ must assess the claimant's "residual functional capacity" ("RFC") before proceeding to step four. *Id.* §§ 404.1520(a)(4)(iii), 404.1520(e). The claimant's RFC is her ability perform physical and mental work activities "despite [her] limitations," based on all relevant evidence in the case record. *Id.* § 404.1545(a)(1). To determine RFC, the ALJ must consider all the claimant's impairments, including those that are not "severe," and any related symptoms that "affect what [the claimant] can do in a work setting." *Id.* §§ 404.1545(a)(1)–(2).

At step four, the ALJ determines whether the claimant has the RFC to perform the physical and mental demands of "[her] past relevant work." *Id.* §§ 404.1520(a)(4)(iv), 404.1520(e). "Past relevant work" is work the claimant has "done within the past 15 years, that was substantial gainful activity." *Id.* § 404.1560(b)(1). If the claimant has the RFC to perform her past relevant work, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv). If the claimant cannot perform her past relevant work, the ALJ will proceed to step five in the sequential evaluation process.

At step five, the last in the sequence, the ALJ considers whether the claimant "can make an adjustment to other work," considering her RFC, age, education, and work experience. *Id.* § 404.1520(a)(v). If so, the ALJ will find the claimant not disabled. *Id.* If the claimant cannot make this adjustment, the ALJ will find the opposite. *Id.*

### C. The ALJ's Application of the Factors

Here, at step one, the ALJ concluded that the record did not establish that Plaintiff engaged in substantial gainful activity since November 1, 2018, the alleged onset date. (Doc. 13-3 at 23).

At step two, the ALJ determined Plaintiff had "severe" impairments including bipolar disorder, PTSD, ADHD, rotator cuff syndrome, lumbar degenerative disc disease,

asthma, obesity, and status-post laparoscopic gastric banding procedure. (*Id.* at 24).

At step three, the ALJ found that Plaintiff did not have any impairment or combination of impairments that met or medically equaled a listed impairment in Appendix 1 to Subpart P of 20 C.F.F. Part 404. (*Id.*) The ALJ then determined Plaintiff had the RFC to perform light work as defined in 20 C.F.R. §404.1567(b) and 416.967(b),

> except she can frequently push, pull and/or reach overhead with both upper extremities. She can frequently balance, can occasionally stoop, kneel, crouch, and/or crawl, can occasionally climb stairs and/or ramps, can occasionally climb ladders, ropes, and/or scaffolds, and can occasionally be exposed to vibrations, unprotected heights and/or moving machinery parts. The claimant can have occasional exposure to dust, noxious odors and fumes, and poor ventilation. She can understand and remember simple instructions, make simple work decisions, carry-out simple instructions, and can occasionally deal with coworkers and/or the public.

(*Id.* at 28).

At step four, the ALJ established that Plaintiff was unable to perform any past relevant work. (*Id.* at 32). At step five, the ALJ found that Plaintiff could make adjustments to perform a significant number of jobs in the national economy given her age, education, work experience, and RFC. (*Id.* at 33). Representative jobs included inspector, packager, and mail clerk. (*Id.*) Accordingly, the ALJ concluded that Plaintiff was not disabled as defined in the Social Security Act from the alleged onset date through March 17, 2021. (*Id.* at 34).

## II.   LEGAL STANDARD

This Court may not set aside a final denial of disability benefits unless the ALJ decision is "based on legal error or not supported by substantial evidence in the record." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). Substantial evidence refers to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Desrosiers v. Sec'y of Health & Human Servs.,* 846 F.2d 573, 576 (9th Cir. 1988)). The Court, in its review, must consider the record in its entirety, "weighing both the evidence that supports and evidence that detracts from the [ALJ's] conclusion." *Id.*

(quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2007)).

The ALJ—not this Court—is responsible for resolving ambiguities, resolving conflicts in medical testimony, determining credibility, and drawing logical inferences from the medical record. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989); *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984)). Therefore, when the evidence of record could result in more than one rational interpretation, "the ALJ's decision should be upheld." *Orn v. Astrue,* 495 F.3d 625, 630 (9th Cir. 2007); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004) ("When the evidence before the ALJ is subject to more than one rational interpretation, [the Court] must defer to the ALJ's conclusion."). Further, this Court may only review the reasons the ALJ provides in the disability determination; it "may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010.

## III.  DISCUSSION

Plaintiff's appeal centers on her mental impairments and raises two issues: (1) the ALJ's explanation lacks substantial evidence to support the rejection of Dr. Ewa Szafraniec's assessments, including a failure to describe the consideration of supportability and consistency factors; and (2) the ALJ did not provide specific clear, convincing reasons for his rejection of Plaintiff's subjective symptom testimony. (Doc. 14 at 13, 20). The Court considers each claim in turn.

### A.  Dr. Szafraniec's Assessments

Plaintiff argues that the ALJ committed materially harmful error because substantial evidence does not support his decision to reject Dr. Szafraniec's assessments, and the ALJ failed to explain how he considered supportability and consistency factors in his decision. (Doc. 14 at 13). The Commissioner contends that substantial evidence amply supports the ALJ's rejection of Dr. Szafraniec's assessments. (Doc. 15 at 5). In rebuttal, Plaintiff states that the ALJ's "professed reasons" for rejecting Dr. Szafraniec's assessments were not adequately articulated or explained, and the ALJ's explanation regarding supportability and consistency factors was insufficient. (*See* Doc. 16 at 5–7).

In March and December of 2020, Dr. Szafraniec completed Plaintiff's mental RFC assessments. (Doc. 13-9 at 34–35; Doc. 13-11 at 21–22). The ALJ addressed Dr. Szafraniec's assessments as follows:

> I considered the opinions of Ewa Szafraniec, M.D., Ph.D, a mental treatment provider …. In March 2020, she opined the claimant's impairments precluded an eight-hour workday, and generated severe impairment in her ability to relate to other people, complete daily activities, understand, carry out, and remember instructions, respond appropriately to supervision, coworkers, customary work pressures, and sustain work pace; moderately-severe-to-severe impairment in her ability to care for her personal habits, and maintain her interests; and moderately severe impairment in her ability to perform simple tasks. In December 2020, Dr. Szafraniec similarly opined the claimant's impairments generated limitations that were moderately severe, moderately severe to severe, or severe. Each of these statements defines a moderately severe impairment as an impairment generating off-task behavior between 16 and 20 percent of an eight-hour workday; while a severe impairment generates off-task behavior for more than 21 percent of an eight-hour workday. Per the vocational expert's testimony, either level of limitation would be work preclusive. The record, including Dr. Szafraniec's own previously-cited treatment notes, does not establish that the claimant's impairments generate any significant limitation in her ability to maintain on-task behavior during the performance of work within her residual functional capacity, let alone work-preclusive off-task behavior. Therefore, Dr. Szafraniec's opinions are not supported in her own treatment notes, and are inconsistent with the rest of the above-described evidence, and the record as a whole. I did not find them persuasive.

(Doc. 13-3 at 30–31) (internal citation omitted).

Courts in this circuit previously distinguished among treating physicians, examining physicians, and non-examining physicians, generally giving the greatest weight to the opinions of treating physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). This distinction was referred to as the "treating physician rule." *See Regula v. Delta Family-Care Survivorship Plan*, 266 F.3d 1130, 1139 (9th Cir. 2001), *cert. granted*, *vacated sub nom. Regula v. Delta Family-Care Disability & Survivorship Plan*, 539 U.S. 901 (2003). However, "in March of 2017, the [SSA] amended their regulations to abrogate the treating physician rule, among other changes." *Alonzo v. Comm'r of Soc. Sec. Admin.*, No. CV-18-08317-PCT-JZB, 2020 WL 1000024, at *3 (D. Ariz. Mar. 2, 2020) (citing

*Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5852–57 (Jan. 18, 2017)). Claims filed on or after March 27, 2017, must adhere to the amended regulations. (*Id.*) These regulations state that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from … medical sources." 20 C.F.R. §§ 404.1520c, 416.920c.

In addition to the abrogation of the "treating physician rule," as of March 2017, the amended SSA regulations specify that the ALJ must "consider all medical opinions according to several enumerated factors, including whether the opinion is supported by objective medical evidence and whether the opinion is consistent with the evidence from other sources." *Alonzo*, 2020 WL 1000024, at *3. Supportability and consistency are the "most important factors," and the ALJ must explain how he considered the evidence in light of these two factors for a medical source's opinions. 20 C.F.R § 404.1520c(b)(3).

Moreover, the Ninth Circuit recently determined that in cases governed by the amended SSA regulations above, the "specific and legitimate" standard is also no longer applicable. *See Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). In *Woods*, the Ninth Circuit concluded the following:

> Our requirement that ALJs provide 'specific and legitimate reasons' for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions is likewise incompatible with the revised regulations. Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations.

*Id.* (quotations and internal citations omitted). Subsequently, it is not required that an ALJ provide "specific and legitimate reasons" to reject a treating physician's assessment. *Id.* at 791.

As discussed previously, the ALJ, not the reviewing court, is responsible for resolving ambiguities and conflicts in medical testimony and the medical record. *See Andrews*, 53 F.3d at 1039. Therefore, when the evidence of record could result in more than one rational interpretation, "the ALJ's decision should be upheld." *Orn*, 495 F.3d at

630; *see also Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir 1992) (citations omitted) (stating that "if the evidence can support either outcome, the Court may not substitute its judgment for that of the ALJ").

Here, substantial evidence reinforces the ALJ's conclusion that Dr. Szafraniec's assessments lacked support from the medical record and were inconsistent with other sources from the record. *See Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) ("The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." (quoting *Magallanes*, 881 F.2d at 751)).

First, the ALJ determined that the medical treatment notes of record, including Dr. Szafraniec's, did not support Dr. Szafraniec's assessments. (Doc. 13-3 at 30). The ALJ substantiates this determination by citing to these treatment notes throughout his decision; notably, he cites Dr. Szafraniec's treatment notes at least 20 times. (Doc. 13-3 at 26–28). For example, the ALJ summarizes medical provider treatment notes, including Dr. Szafraniec's, as follows:

> While treatment providers have observed signs consistent with distraction, such as flight of ideas, racing thoughts, concrete, circumstantial, and/or tangential thought processes, they have rarely if ever observed explicit limitations in [Plaintiff's] ability to understand or apply information, much less for a period lasting at least 12 consecutive months. They have generally observed that the claimant's memory is intact or normal, even when she was exhibiting other signs of mental dysfunction, and have noted she is alert and oriented, and exhibits average intelligence.

(*Id.* at 26) (internal citations omitted). This information does not support Dr. Szafraniec's March 2020 assessment positing Plaintiff's severe impairment in her ability to "complete daily activities, understand, carry out, and remember instructions … and sustain work pace." (*Id.* at 30). It also conflicts with Dr. Szafraniec's opinion that Plaintiff has "moderately severe impairment in her ability to perform simple tasks." (*Id.*)

The ALJ provides further summarization of medical provider treatment notes, including Dr. Szafraniec's:

> Treatment providers have observed signs consistent with social limitations, including … irritability, flat, blunted labile, or agitated affects, intense or intermittent eye contact, and pressured, rapid slow, or over productive speech. However, they have also frequently observed that the claimant exhibits good or fair cooperation, and good eye contact.

(Doc. 13-3 at 26) (internal citations omitted). This description does not support Dr. Szafraniec's claim that Plaintiff's ability to "respond appropriately to supervision [and] coworkers" is severely impaired. (*Id.*) Accordingly, based on the above, the ALJ appropriately concluded that Dr. Szafraniec's "previously-cited" treatment notes do not support her subsequent assessments, e.g., impairments significantly limit the ability to "maintain on-task behavior during the performance of work within her [RFC], let alone work-preclusive off-task behavior." (*Id.* at 31).

Second, the ALJ determined that Dr. Szafraniec's assessments were inconsistent with other sources from the record. (*Id.*) To demonstrate, in referencing additional sources from the record, the ALJ states, "[Plaintiff] has been observed to exhibit normal attention and concentration, and has indicated that she is capable of performing activities such as traveling out of state to attend a baby shower, making plans with friends, paying for car repairs, and babysitting;" "the medical record clearly demonstrates that during the relevant period [Plaintiff] was able to participate in activities;" and "[following March 2019], subsequent records almost invariably reflect normal or age-appropriate insight and judgment." (*Id.* at 28, 30). This information is inconsistent with Dr. Szafraniec's assertion that Plaintiff has "moderately-severe-to-severe-impairment in her ability to care for her personal habits, and maintain her interests" and "severe impairment in her ability to relate to other people [and] complete daily activities." (*Id.* at 30).

Plaintiff asserts that the ALJ's reference to "above-described evidence" is non-specific and therefore does not provide sufficient support for the ALJ's decision to discount Dr. Szafraniec's opinion. (Doc. 14 at 16). Plaintiff argues that "it is not this Court's responsibility to first find the ALJ's medical evidence … and then connect referenced notes to specific conflicts within Dr. Szafraniac's assessed limitations." (*Id.*) The Commissioner

contends the ALJ sufficiently supported his decision, because although the ALJ's discussion of Dr. Szafraniec's opinion did not include specific passages from the record or Dr. Szafraniec's and other providers' treatment notes, "the ALJ cited and discussed this evidence extensively earlier in the decision." (Doc. 15 at 6). The Court agrees with the Commissioner. *See Kennedy v. Colvin*, 738 F.3d 1172, 1178 (9th Cir. 2013) (indicating that the ALJ is only required to discuss and evaluate the evidence that supports his conclusion; he is not required to do so in a specific location within the decision); *Labine v. Comm'r of Soc. Sec. Admin.*, No. CV-19-04528-PHX-JZB, 2020 WL 6707822, at *4 (D. Ariz. Nov. 16, 2020) ("The Court reads the ALJ's decision as a whole, and not just one sentence of it in a vacuum. Thus, based on the ALJ's earlier analysis … the Court can reasonably discern what evidence the ALJ is referring to when stating that [the evidence is unsupportive or inconsistent]."). Consequently, the Court deems appropriate the ALJ's statement that Dr. Szafraniec's opinions are unpersuasive because they "are inconsistent with the rest of the above-described evidence, and the record as a whole." (*Id.* at 31).

Plaintiff also alleges that the ALJ erred in failing to provide support for his decision to find reconsideration reviewer Dr. J. Rubin's opinion "somewhat persuasive" and favoring selected portions of this opinion over Dr. Szafraniec's. (Doc. 14 at 19–20). Plaintiff claims that the ALJ's finding that Dr. Rubin's social limitation assessment was "extremely vague" was unfounded. (*See id.* at 19). In his analysis of Dr. Rubin's findings, the ALJ cited Dr. Rubin's ultimate statement that Plaintiff was limited to work with "limited social demands." (Doc. 15 at 11; Doc. 13-3 at 30). Per Plaintiff, "the ALJ failed to mention specific limitations Dr. Rubin opined," i.e., that Plaintiff "would be best suited to work with minimal social demands where interaction with others is superficial and occasional." (Doc. 14 at 19). The Commissioner maintains, and the Court agrees, that Plaintiff's argument is without merit, because even if Plaintiff's interpretation of Dr. Rubin's social limitation assessment was rational, "the ALJ [also] reasonably interpreted Dr. Rubin's final statement [farther down the page] as the ultimate description of [Plaintiff's] limitations." (Doc. 15 at 12); *see Batson*, 359 F.3d at 1198 ("When the

evidence before the ALJ is subject to more than one rational interpretation, [the Court] must defer to the ALJ's conclusion."). Thus, the Court agrees with the Commissioner's assertion that "the ALJ properly assessed both Dr. Szafraniec's opinion and Dr. Rubin's findings." (Doc. 15 at 12). The Court therefore finds that substantial evidence supports the ALJ's analysis that Dr. Rubin's findings are somewhat persuasive, and Dr. Szafraniec's assessments are unpersuasive. (Doc. 13-3 at 30).

In sum, the Court concludes that in examining the evidence, a reasonable person could reach the same conclusions as the ALJ. That the evidence of record may possibly have an alternate interpretation is not germane to this Court's finding. *See Andrews,* 53 F.3d at 1039–40 ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. We must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.") (citations omitted). Contrary to Plaintiff's assertions, the Court holds that substantial evidence supports the ALJ's findings, and the ALJ sufficiently explained his consideration of the supportability and consistency factors per 20 C.F.R § 404.1520c(b)(3). Hence, the ALJ did not err in rejecting Dr. Szafraniec's assessments.

### B. Plaintiff's Symptom Testimony

Plaintiff argues that the ALJ committed materially harmful error because substantial evidence did not support the ALJ's rejection of Plaintiff's subjective symptom testimony; in particular, the ALJ did not provide specific, clear, and convincing reasons for his rejection. (Doc. 14 at 20). Plaintiff further asserts that the limitations Plaintiff reported in her testimony "preclude all work." (Doc. 16 at 7). Conversely, the Commissioner states that substantial evidence supports the ALJ's assessment of Plaintiff's subjective symptom testimony. (Doc. 15 at 13).

In the Ninth Circuit, determining the credibility of a claimant's testimony regarding subjective symptoms involves a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must establish whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or

other symptoms alleged." *Id.* (internal citation and quotation marks omitted). Next, if such evidence is present, there is no evidence of malingering, and the ALJ finds the claimant's testimony unpersuasive, the ALJ must then provide an explanation including "cogent reasons for the disbelief." *See Lester*, 81 F.3d at 834 (quoting *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir.1990)). The ALJ's reasons for rejecting the claimant's testimony must be "specific, clear, and convincing." *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014).

In evaluating the credibility of a claimant's testimony, the ALJ must rely on one or more of the following: contradictions within the claimant's subjective testimony, conflicts between the claimant's testimony and conduct, or reasons unrelated to the claimant's testimony (e.g., previous deceitful behavior). *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). When rejecting a claimant's subjective testimony, the ALJ is required to specify testimony that was not credible and the evidence undermining it. *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) (citation omitted). The ALJ's explanation for rejecting the claimant's testimony "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 82 Fed. Reg. 49462, 49467 (Oct. 25, 2017). A reviewing court must be able to conclude that the ALJ's rejection of a claimant's testimony was not arbitrary, and reversal of the ALJ's decision is warranted when a court cannot reasonably discern the ALJ's reasoning. *See Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1997); *Treichler*, 775 F.3d at 1103.

Here, the ALJ determined the credibility of Plaintiff's subjective testimony in accordance with the two-step analysis described above. At the first step, "after careful consideration of the evidence," the ALJ concluded that "[Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Doc. 13-3 at 29). However, at the second step, the ALJ found that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons

explained in this decision." (*Id.*)

The ALJ reported Plaintiff's alleged subjective symptoms as follows:

> In her written submissions, the claimant alleged her impairments limited her ability to sleep, talk, concentrate, understand, remember, follow instructions, complete tasks, get along with others, handle stress, and adapt to changes in routine. She reported these limitations affected her ability to perform personal care, prepare meals, do house and yard work, get around, shop, handle money, enjoy her hobbies, and socialize. At the hearing, the claimant testified her mental impairments limited her capacity to attend work, and had limited her capacity to interact appropriately and stay on task when she did attend. She reported she experienced periods of mania during which she did not sleep, experienced racing thoughts, distractibility, and irritability, and had a difficult time making decisions. The claimant indicated she experienced periods of depression, during which she became anhedonic, abandoned her personal care functions, and isolated. She stated she experienced anxiety attacks once or twice per week, which fatigued her, forcing rest periods even after they resolved. The claimant said her anxiety limited her ability to drive, and she rarely drove farther than a few miles from her home. She testified her anxiety also limited her ability to shop for groceries, adding that she relied on the assistance of her mother to do so, and tried to do so during off times. She reported she had difficulty functioning in crowds of 15 persons or more, and avoided interactions with people she did not already know. The claimant said her memory was extremely limited, which generated problems in her day-to-day life.

(*Id.*) (internal citations omitted). Regarding Plaintiff's activities and therapy progress, the ALJ reported:

> [T]he medical record clearly demonstrates that during the relevant period the claimant was able to participate in activities, including attending a baby shower; able to travel; drive an automobile; make plans with friends; bring her car in for repairs and pay for the repairs; assist a friend to babysit (1F at 19); and attend physical therapy sessions. Further, the claimant was doing so well and met her goals during the relevant period that her psychiatric services were terminated and/or she declined further services.

(*Id.*) (internal citations omitted).

The Court finds that the evidence of record sufficiently supports the ALJ's conclusions. Further, the ALJ provided specific, clear, and convincing reasons for rejecting Plaintiff's testimony by highlighting relevant evidence from the record throughout his

decision. *See Kennedy*, 738 F.3d at 1178 (stating that the ALJ is not required to discuss and evaluate the evidence that supports his conclusion in a specific place within the decision). For example, as the ALJ noted, the record showed that Plaintiff engaged in activities demonstrating that the intensity, persistence and limiting effects of her symptoms were not as severe as her testimony alleged. *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i) (permitting an ALJ to discount a claimant's symptom testimony when inconsistent with the claimant's "daily activities"); *see also Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (confirming an ALJ decision that a claimant's activities— preparing meals, doing chores, and caring for a friend's child—contradicted his symptom testimony of concentration problems).

Here, the ALJ stated the record established that Plaintiff was able to attend a baby shower, travel from Arizona to California, drive an automobile, make plans with friends and maintain friendships, go to a party, bring her car in for repairs and pay for the repairs, assist a friend with babysitting, and attend physical therapy sessions. (Doc. 13-3 at 29; Doc. 15 at 17). All of these activities are inconsistent with Plaintiff's oral and written allegations of at least severe difficulty interacting with people, socializing, maintaining attention, completing tasks, handling money, and making decisions. (*See* Doc. 13-3 at 26–29); *see, e.g.*, *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) (affirming an ALJ's decision to reject a claimant's symptom testimony when the claimant's activities were indicative of a higher level of functioning, including interacting with family, shopping, managing finances, and caring for personal needs).

In addition, as the ALJ described in his decision, the objective medical record did not completely correspond with Plaintiff's symptom testimony. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (stating that though a claimant's subjective symptom testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor" in verifying claimant's symptom severity). For example, the ALJ noted that the medical record showed multiple instances of Plaintiff exhibiting good eye contact and fair-to-good cooperation,

which contrasts with Plaintiff's allegation of at least severe difficulty interacting with others. (*See* Doc. 13-3 at 26). Furthermore, contrary to Plaintiff's report that "her memory was extremely limited," the ALJ observed that the medical record established multiple occasions where care providers observed that Plaintiff's memory was "intact or normal." (*Id.*)

Moreover, in his decision, ALJ also outlined evidence suggesting that Plaintiff's impairments responded favorably to medicinal and therapeutic treatment. (*See* Doc. 13-3 at 29–33). For example, the ALJ states that "the claimant was doing so well and met her goals during the relevant period that her psychiatric services were terminated and/or she declined further services," and "the record exhibited significant limitation during the early portion of the relevant period, but later records reflect improved function." (*Id.* at 29, 27). As another example, the ALJ remarked on treatment notes from December 2018 through March 2019 showing Plaintiff had "partial insight and mildly to moderately impaired judgment." (*Id.* at 28). However, following a prescribed increase in anxiety medication in March 2019, "subsequent records almost invariably reflect normal or age-appropriate insight and judgment." (Doc. 13-18 at 38–39; Doc. 13-3 at 28). These medical records indicate improvement in Plaintiff's symptom severity in response to treatment, which further substantiates the ALJ's decision to discount Plaintiff's subjective testimony. *See Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) ("evidence of medical treatment successfully relieving symptoms can undermine a claim of disability"); *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983) (upholding benefit denial where claimant's impairments responded well to medication).

Plaintiff also claims that the ALJ's alleged error in rejecting Plaintiff's testimony was not harmless. (Doc. 14 at 25). Plaintiff argues that the VE's "uncontested" testimony that Plaintiff's "reported symptoms would interfere with the ability to perform any sustained work," when paired with Plaintiff's subjective testimony, would require the ALJ to find Plaintiff disabled. (*Id.*) The Court disagrees. Even assuming the ALJ erred in rejecting Plaintiff's testimony, this would not have been likely to impact the ALJ's ultimate

decision. First, Plaintiff's ability to participate in the activities previously outlined suggests that Plaintiff's limitations are not completely work-preclusive and itself conflicts with what Plaintiff mischaracterizes as VE's "uncontested" testimony. *See Molina*, 674 F.3d at 1113 ("Even where [a claimant's] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."). Second, in his decision, the ALJ reports he asked the VE "whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and [RFC]." (Doc. 13-3 at 33). The VE testified that given these factors, Plaintiff "would be able to perform the requirements of representative occupations such as [inspector, packager, and mail clerk]." (*Id.*) Although the ALJ briefly mentioned the VE's above "uncontested" testimony in his decision, it is the latter VE testimony, not the former, that the ALJ used to determine "a finding of 'not disabled' is therefore appropriate." (*Id.* at 31, 33). Thus, the Court finds that even in the event the ALJ committed error by rejecting Plaintiff's subjective testimony, such error would be harmless, as it would not likely have changed the final outcome. *See Molina*, 674 F.3d at 1115 ("[The Ninth Circuit has] deemed legal errors harmless where it was clear they did not alter the ALJ's decision.").

Ultimately, the Court concludes that the ALJ provided specific, clear, and convincing reasons for rejecting Plaintiff's symptom testimony by pointing to specific evidence throughout the record that contradicted Plaintiff's subjective symptoms. Thus, substantial evidence supports the ALJ's decision. Accordingly, the Court finds the ALJ committed no harmful legal error.

### C. Further Proceedings

Finally, Plaintiff requests remand for a calculation of benefits pursuant to the credit-as-true rule, or in the alternative, further administrative proceedings. (Doc. 14 at 25). However, because the Court is upholding the ALJ's decision, the Court denies Plaintiff's request for remand without considering the credit-as-true doctrine. *See Leon v. Berryhill*, 880 F.3d 1041, 1047 (9th Cir. 2017), *as amended* (Jan. 25, 2018) (stating a direct award of

benefits is only appropriate "when the record clearly contradicted an ALJ's conclusory findings and no substantial evidence within the record supported the reasons provided by the ALJ for denial of benefits").

### IV.     CONCLUSION

Based on the foregoing,

**IT IS ORDERED** that the ALJ's decision is **AFFIRMED**. The Clerk of Court shall enter judgment accordingly.

Dated this 10th day of August, 2022.

James A. Teilborg
Senior United States District Judge